**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| YESENIA DIAZ | ) | |
| | ) | |
| | ) | Case No. |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| ED MINIAT LLC and MINIAT HOLDINGS | ) | |
| LLC,  and SOUTH CHICAGO PACKING, LLC | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

## COMPLAINT

**NOW COMES** the Plaintiff, YESENIA DIAZ ("Diaz" or "Plaintiff"), by and through her attorneys, Lázaro Law Group, LLC and for her Complaint against ED MINIAT LLC, MINIAT HOLDINGS LLC, and SOUTH CHICAGO PACKING LLC (collectively "Defendants"), states as follows:

## NATURE OF ACTION

This action challenges the Defendants' pervasive retaliatory practices and interference with the Plaintiff's disability and leave rights. While employed by the Defendants, Plaintiff was subjected to harassment and discipline after requesting an accommodation to deal with a disability, and again after reporting that harassment. Defendants further failed to offer leave when they were aware of Plaintiff's serious health condition and retaliated against Plaintiff for taking emergency medical leave.

**JURISDICTION AND VENUE**

1.      Plaintiff's claims arise under the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 et seq.; the Illinois Human Rights Act (IHRA), 775 ILCS 5/1 et seq.; the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. § 2601 et seq.; and the Families First Coronavirus Response Act (FFCRA), Pub. L. 116-127, as extended by the Consolidated Appropriations Act (CAA) of 2021, Pub.L. 116–260.

2.      Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b). Defendant's unlawful conduct took place within the jurisdiction of this Honorable Court.

3.      This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

4.      Plaintiff filed a timely charge with the Equal Employment Opportunity Commission ("EEOC") on June 22, 2021.

5.      On July 9, 2021, the EEOC issued a Right to Sue Letter.

6.      Plaintiff has fully complied with the procedural requirements under the ADA and the IHRA.

**PARTIES**

7.      Diaz was employed by the Defendants for over five (5) years.  She resides in Cicero, Illinois.

8.      ED MINIAT LLC, MINIAT HOLDINGS LLC, and SOUTH CHICAGO PACKING LLC are business entities involved in the manufacturing and shipment of food products, headquartered in South Holland, Illinois.

9.      At all times relevant, the Defendants employed Diaz and her supervisors.

## FACTUAL ALLEGATIONS

10.     Diaz was first employed by the Defendants in August 2015 as a Compliance & Logistics Assistant. Defendants unlawfully terminated her on February 26, 2021.

11.     Plaintiff suffers from migraines and seeks treatment regularly from her doctor for this condition.  Her migraines cause blurry vision, nausea, sensitivity to light and sound, and intense headache.

12.     Plaintiff's migraine condition can be managed, and does not interfere with her ability to complete the essential functions of her job when she is provided with reasonable accommodation, such as working in a quiet, dark space, working from home or taking her paid time off (PTO) when necessary.

13.     Throughout her employment with Defendants, Plaintiff's job performance met her employers' reasonable expectations.

14.     Due to her performance, Plaintiff earned a raise on or about October 11, 2016.

15.     Again, due to her performance, Plaintiff earned a promotion to Logistics Analyst and an additional raise on or about May 28, 2019.

16.     In approximately 2019, Ms. Kristen Neal ("Neal") became Plaintiff's direct supervisor.

17.     Although Plaintiff had only received positive feedback and evaluations from previous supervisors, Neal regularly harassed Plaintiff by criticizing her and yelling at her when she requested approval to use her PTO or asked to work from home as a reasonable accommodation for her medical condition.  Additionally, Neal would require Plaintiff to complete work tasks and be available for work calls when she was out on PTO

due to her medical condition, or after working hours had ended. Neal's harassment of Plaintiff was so severe that Plaintiff would suffer panic attacks and extreme anxiety whenever she was required to interact with Neal.

18.     In or about March of 2020, Defendants assigned Plaintiff to work from her home after she exhibited coughing and other symptoms associated with the COVID-19 illness.

19.     On or about July 27, 2020, Plaintiff was expected to work onsite to cover a coworker's absence. However, Plaintiff experienced severe symptoms associated with her migraine condition and was unable to come to the office. Plaintiff informed Neal that if she were allowed to work in a quiet, dark space, such as her home, she could perform all her job duties as required. Plaintiff also noted that she could not drive to the office due to her blurry vision.

20.     Neal became irate and insisted that if anything was needed at the office Plaintiff would need to "find an alternative mode of transportation." Neal also told Plaintiff that she would not be allowed to work from home the following day and would be required to be physically present, regardless of her condition or ability to drive.

21.     Neal's harassment regarding Plaintiff's medical condition prompted Plaintiff to complain to a Human Resources ("HR") Representative, Nikole Maculan ("Maculan"), on or about July 27, 2020. Plaintiff informed Maculan that she suffered from severe migraines and occasionally needed time away from the office to care for this condition. Maculan noted "FMLA?" on the documentation placed in Plaintiff's personnel file but failed to offer medical leave to Plaintiff following this exchange.

22.     On or about July 28, 2020, as a direct result of Neal's harassment, Plaintiff reported for work onsite, despite continued symptoms of her migraine condition.  Upon arrival onsite, Plaintiff was refused entry to the premises due to a fever and was sent home.  Neal continued to harass Plaintiff with work calls and tasks after she was sent home, requiring that Plaintiff work from home despite her symptoms.

23.     Following her complaint to HR, on or about August 4, 2020, Plaintiff had an in-person conversation with Maculan in which she detailed Neal's harassment regarding her medical condition and requests for accommodation.

24.     During this conversation, Diaz informed Maculan that Neal was forcing her to work onsite, even though Diaz had explained her two minor children's schools were closed to in-person learning, and she needed to be at home to supervise them.

25.     Following this conversation, Plaintiff was required by Neal to work onsite on several occasions, despite her need to supervise her children at home.

26.     On or about September 3, 2020, Plaintiff had her mid-year review with Neal.  During this meeting, Neal never mentioned any performance issues that Plaintiff needed to address.  However, Neal informed Plaintiff that she was angry with Plaintiff for reporting Neal to HR.  Neal stated, "you know what you did," "that just didn't sit right with me," and insinuated she wanted Plaintiff to apologize for reporting her to HR.  When Plaintiff refused, Neal told Plaintiff she would follow up with her.

27.     On or about September 16, 2020, *less than two weeks* after Plaintiff's mid-year review, Neal placed Plaintiff on a pretextual Performance Improvement Plan (PIP), in retaliation for her complaints.  Attached as Exhibit "A" is a true and correct copy of Plaintiff's Peformance Improvement Plan. None of the issues noted in the PIP were

mentioned to Diaz during her mid-year review. Additionally, the performance concerns mentioned in the PIP were pretextual or false, for example:

a. The PIP identified a "performance concern" that Plaintiff had put forth "inconsistent effort" in identifying "opportunities for freight spend reduction…in the GA lane;" however, the GA lane was her co-worker's responsibility and did not constitute a regular part of her duties. *See* Ex. A p 2.

b. At her 30 day review, Neal gave Plaintiff negative feedback about several miniscule or nonexistent issues such as identifying an occasion wherein Plaintiff did not return a call to a manager within the company; however, Neal failed to include that Plaintiff had communicated with the manager through Skype and had no further reason to return the call. *See* Ex. A p 5.

c. The plan was scheduled to last 90 days; however, Neal continually refused to have Plaintiff's 90 day review, which should have been completed in December 2020, and extended the plan throughout the remainder of Plaintiff's employment.

28. On or around November 19, 2020, Plaintiff sent a text message to Neal informing her that she would not be able to work onsite the following day, as she was suffering symptoms associated with COVID-19, including congestion, fatigue, and cough. Plaintiff informed Neal that she would work from home instead. Neal responded to the text that she was "sorry to hear" about Plaintiff's symptoms.

29.     On or around November 20, 2020, Plaintiff did not report onsite for work but worked from home instead.  Neal called Plaintiff in an extremely irate state, yelling at Plaintiff for not reporting onsite.

30.     On or around November 21, 2020, Plaintiff exchanged a series of text messages with Maculan wherein Plaintiff complained of Neal's harassment over Plaintiff being absent from the worksite while exhibiting symptoms of COVID-19.

31.     In or around early January 2021, Plaintiff contracted COVID-19 and took five (5) days of emergency medical leave  under the FFCRA, in accordance with the terms of the CAA.

32.     Throughout her medical leave, Neal continually harassed Plaintiff with work tasks and demanded she be available to take work calls, despite her illness.  Further, Neal pressured Plaintiff to return to work as soon as possible, despite her continued symptoms, and her need to care for her minor child who had also contracted COVID-19. As a direct result of this pressure, Plaintiff returned to work after five (5) days instead of taking the full ten (10) days available under the FFCRA.

33.     On or about January 29, 2021, Plaintiff returned to work and again reported Neal's harassment to Maculan.

34.     As a direct result of her complaints, and in retaliation for taking emergency medical leave, Neal terminated Plaintiff's employment on or about February 26, 2021.

**FIRST CAUSE OF ACTION**
**DISCRIMINATION IN VIOLATION OF THE ADA**

35.     Plaintiff incorporates the preceding paragraphs as if alleged herein.

36.     The Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 et seq., makes it unlawful to discriminate against any individual in the terms, conditions, or

privileges of employment on the basis of disability. The ADA additionally requires an employer to reasonably accommodate an employee's disability.

37.     The above facts taken by Defendant amount to discrimination based on disability and failure to accommodate in violation of ADA.

38.     Despite Defendant's knowledge of the discrimination toward Plaintiff, it failed to take any appropriate action to prevent or correct the discriminatory work environment to which Plaintiff was subject.

39.     Accordingly, Plaintiff alleges differential treatment under the ADA.

40.     As a direct and proximate result of the foregoing violations of the ADA, Plaintiff has suffered economic and non-economic damages included but not limited to denial of wages and other benefits, lost interest on those wages as well as lost potential to advance as an employee.

## SECOND CAUSE OF ACTION
## RETALIATION IN VIOLATION OF THE ADA

41.     Plaintiff incorporates the preceding paragraphs as if alleged herein.

42.     The Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 et seq., makes it unlawful to take an adverse employment action in retaliation against any individual who engages in a protected activity under the statute, such as complaining of harassment on the basis of disability.

43.     The above acts taken by Defendant amount to retaliation for complaints of harassment on the basis of disability in violation of ADA.

44.     As a direct result of her complaints of harassment by her supervisor, Defendants first placed Plaintiff on a Performance Improvement Plan, and ultimately terminated her employment.

45.     Accordingly, Plaintiff alleges retaliation under the ADA.

46. As a direct and proximate result of the foregoing violations of the ADA, Plaintiff has suffered economic and non-economic damages included but not limited to denial of wages and other benefits, lost interest on those wages as well as lost potential to advance as an employee.

**THIRD CAUSE OF ACTION**
**DISCRIMINATION IN VIOLATION OF THE IHRA**

47. Plaintiff incorporates the preceding paragraphs as if alleged herein.

48. The Illinois Human Rights Act (IHRA), 775 ILCS 5/1 et seq., makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of a handicap. The IHRA additionally reauires employers to accommodate an employee's handicap.

49. The above facts taken by Defendant amount to discrimination based on disability in violation of the IHRA. Defendant additionally failed to reasonably accommodate Plaintiff.

50. Despite Defendants' knowledge of the discrimination toward Plaintiff, it failed to take any appropriate action to prevent or correct the discriminatory work environment to which Plaintiff was subject.

51. Accordingly, Plaintiff alleges differential treatment under the IHRA.

52. As a direct and proximate result of the foregoing violations of the IHRA, Plaintiff has suffered economic and non-economic damages included but not limited to denial of wages and other benefits, lost interest on those wages as well as lost potential to advance as an employee.

**FOURTH CAUSE OF ACTION**
**RETALIATION IN VIOLATION OF THE IHRA**

53. Plaintiff incorporates the preceding paragraphs as if alleged herein.

54. The Illinois Human Rights Act (IHRA), 775 ILCS 5/1 et seq., makes it unlawful to take an adverse employment action in retaliation against any individual who

engages in a protected activity under the statute, such as complaining of harassment on the basis of disability.

55.   The above acts taken by Defendant amount to retaliation for complaints of harassment on the basis of disability in violation of IHRA.

56.   As a direct result of her complaints of harassment by her supervisor, Defendants first placed Plaintiff on a Performance Improvement Plan, and ultimately terminated her employment.

57.    Accordingly, Plaintiff alleges retaliation under the IHRA.

58.   As a direct and proximate result of the foregoing violations of the IHRA, Plaintiff has suffered economic and non-economic damages included but not limited to denial of wages and other benefits, lost interest on those wages as well as lost potential to advance as an employee.

**FIFTH CAUSE OF ACTION**
**INTERFERENCE IN VIOLATION OF THE FMLA**

59.   Plaintiff incorporates the preceding paragraphs as if alleged herein.

60.   The FMLA at 29 U.S.C. § 2615(a)(1) prohibits an employer from "interfere[ing] with …the exercise or the attempt to exercise, any right" provided by the FMLA.

61.   Plaintiff was eligible for FMLA having worked the time period required by the FMLA.

62.   Plaintiff was eligible for intermittent FMLA because of a serious medical condition causing migraine headaches.

63.   Plaintiff put Defendants on inquiry notice of her need for FMLA leave in that she spoke with Defendants' Human Resources representative regarding her serious medical condition and the difficulty it presented in working onsite.

64.   Regardless, Defendants failed to offer FMLA leave resulting in prejudice to Plaintiff.

65.    The above acts taken by Defendants amount to interference in violation of the FMLA.

66.    As a direct and proximate result of the wrongful acts of Defendants, as alleged herein, Plaintiff has suffered damages, without limitation, in the form of lost wages, earnings, benefits of employment and liquidated damages, in an amount according to proof at trial.

## SIXTH CAUSE OF ACTION
## RETALIATION IN VIOLATION OF THE FFCRA AND CAA

67.    Plaintiff incorporates the preceding paragraphs as if alleged herein.

68.    The Families First Coronavirus Response Act (FFCRA), Pub. L. 116-127, as extended by the Consolidated Appropriations Act (CAA) of 2021, Pub.L. 116–260 makes it unlawful for an employer who voluntarily elected to provide emergency medical leave in accordance with the FFCRA after December 31, 2020 to retaliate against an employee who took leave in order to seek treatment for a diagnosis of COVID-19.

69.    The above acts taken by Defendants amount to retaliation in violation of the FFCRA, as extended by the CAA.

70.    As a direct result of taking five (5) days of FFCRA leave, Defendants retaliated against Plaintiff and terminated her employment.

71.    As a direct and proximate result of the wrongful acts of Defendants, as alleged herein, Plaintiff has suffered damages, without limitation, in the form of lost wages, earnings, benefits of employment and other losses, as well as liquidated damages in an amount according to proof at trial.

## SEVENTH CAUSE OF ACTION
## INTERFERENCE IN VIOLATION OF THE FFCRA AND CAA

72.    Plaintiff incorporates the preceding paragraphs as if alleged herein.

73.    The Families First Coronavirus Response Act (FFCRA), Pub. L. 116-127, as extended by the Consolidated Appropriations Act (CAA) of 2021, Pub.L. 116–260 makes it unlawful for an employer who voluntarily elected to provide emergency medical leave in accordance with the FFCRA after December 31, 2020 to require an employee to work during an emergency medical leave, or to require an employee to return to work before the medical emergency leave has expired.  The FFCRA, also makes it unlawful for an employer to deny an employee leave if that employee is caring for a child whose school is closed or unavailable for reasons related to COVID-19.

74.    The above acts taken by Defendants amount to interference with an emergency medical leave in violation of the FFCRA, as extended by the CAA.

75.    Plaintiff's supervisor repeatedly required her to work onsite after Plaintiff informed both her supervisor and HR that her minor children's schools were closed due to the pandemic, and that she needed to be at home to supervise them.

76.    Plaintiff's supervisor repeatedly harassed her with calls and tasks related to work while Plaintiff was on COVID-19 related medical leave, and ultimately required her to return to work after five (5) days instead of the ten (10) days for which she was eligible.

77.    As a direct and proximate result of the wrongful acts of Defendants, as alleged herein, Plaintiff has suffered damages, without limitation, in the form of lost wages, earnings, benefits of employment and other losses, as well as liquidated damages in an amount according to proof at trial.

**WHEREFORE**, Plaintiff requests that this Honorable Court enter judgment in her favor and against Defendants, and enter an Order awarding the following relief:

a.    All wages and benefits she would have received but for the Defendants' discriminatory and retaliatory actions, liquidated damages thereon, and prejudgment interest;

b.    Employment benefits and other compensation lost to her as a result of Defendant's discrimination and retaliation;

c.      Reinstatement to her position or, in the alternative, front pay for a reasonable amount of time;

d.      Compensatory damages for violation of the state law;

e.      Punitive damages for violation of state law;

f.      An award of costs, as provided by F.R.C.P. 54(d)(1);

g.      An award of reasonable attorney's fees; and

h.      Such other relief as the Plaintiff may be entitled to under ADA, IHRA, FMLA, FFCRA and any other statute or which the Court deems equitable and just.

## JURY TRIAL DEMAND

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Dated: October 1, 2021               Respectfully Submitted,

Lázaro Law Group, LLC

/s/ Rafael E. Lázaro
/s/ Catherine Roland
321 S. Plymouth Court, Suite 1250
Chicago, Illinois 60604
(312) 461-9900;
(773) 305-4068 (fax)
rlazaro@lazarolawgroup.com
croland@lazarolawgroup.com